UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-22687-ALTMAN

MATIAS MOSSE, as Parent and Natural
Guardian of A.M.,

     *Plaintiff*,

*v.*

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC.,

     *Defendant*.

_____/

## ORDER

Our Plaintiff sued an insurance company for denying a request for a growth-hormone medication, alleging a violation of the Employment Retirement Income Security Act of 1974 ("ERISA"). The Defendant now moves for a judgment on the pleadings. After careful review, we **DENY** that motion.

## THE FACTS

Our Plaintiff is the "parent and natural guardian" of "A.M.,"[1] a "minor child." Complaint [ECF No. 1] at 1 (cleaned up). The Defendant—Blue Cross and Blue Shield of Florida, Inc. ("Florida Blue"), "a health insurance company"—"administered employer health benefits and administered health insurance claims for Plaintiff in the State of Florida[.]" *Id.* ¶¶ 5, 8; *see also id.* ¶ 10 ("Trinet is the Plan administrator, however, pursuant to the plan's terms, *only* Florida Blue is empowered to interpret the Plan and make claims decisions under the Plan."); *id.* ¶ 13 ("[T]he Plan Beneficiary was covered by the health insurance plan sponsored and self-funded by his parent or guardian's employer group,

---

[1] The Complaint elsewhere calls the child "V.H." Complaint ¶ 16. Because that discrepancy appears to be an error, we refer to the child as "A.M."

Trinet."). According to the Complaint, "treating providers . . . determined" that A.M. "has growth hormone deficiency" ("GHD"), "evidenced by decreased velocity with height, short stature, delayed bone age," as well as "multiple skin issues which require[ ] [the] growth hormone medication Skytrofa, a once-weekly GH injection indicated for pediatric GHD." *Id.* ¶ 16; *see also id.* ¶ 17 ("The family and physician have proactively determined that Skytrofa is the only Growth Hormone Therapy suitable for this Patient to prevent foreseeable skin complications, rather than wait for the child to suffer reactions to daily injections."). The Plaintiff thus requested that the Defendant "approve [a] Skytrofa 9.1 MG Cartridge Prescription." *Id.* ¶ 22.

In a "letter dated April 21, 2025," however, the Defendant "denied the request based on the Handbook/Certificate of Coverage or Drug Lists[.]" *Id.* ¶ 18; *see also id.* ¶ 19 ("The Letter then stated that the request was not approved because the product/service is not covered under your pharmacy plan."). And, in a "letter dated April 23, 2025," the Defendant . . . issued a second denial letter." *Id.* ¶ 21. So, "on approximately May 5, 2025, the [Plaintiff] submitted a request for Second Level Appeal Review with a specific request that a meaningful review be provided and proper appeal be conducted in accordance with ERISA guidelines during the internal appeal process *prior* to initiating an external review." *Id.* ¶ 24. "On or about May 24, 2025[,] Florida Blue issued a letter stating that it received a . . . formal appeal request[ ] on May 23, 2025[,] for Skytrofa," that it provided an "outcome . . . on April 23, 2025," and that "this was the final level of appeal[.]" *Id.* ¶ 30. And, "[o]n or about May 27, 2025[,] Florida Blue issued a letter stating that it received a formal appeal request[ ] on April 23, 2025[,] for Skytrofa," that it provided an "outcome . . . on April 23, 2025," and that "this was the final level of appeal[.]" *Id.* ¶ 31. Because of those denials, the Plaintiff maintains, the child "remains unable to receive the medically necessary growth hormone medication[.]" *Id.* ¶ 37.

In June 2025, the Plaintiff sued the Defendant, claiming that the Defendant "failed to provide Plaintiff with all rights the Insured is entitled to under the terms of the Plan administered by

Defendant, under which he is covered, in violation of ERISA." *Id.* ¶ 46; *see also id.* ¶ 48 ("Defendant, its agents, and employees, further violated ERISA by interpreting and implementing ERISA plan terms in a way that was systematically arbitrary and capricious, and failed to provide a benefit determination and appeal process that provides for a full and meaningful review of benefit pre-authorization requests and determinations."). In December 2025, the Defendant filed a Motion for Judgment on the Pleadings (the "Motion") [ECF No. 27], arguing that "the allegations of the Complaint, and the documents incorporated therein, establish that there are no circumstances under which the Court could award benefits under the Plan's terms." Motion at 2. That Motion is now ripe for adjudication. *See* Response to the Motion (the "Response") [ECF No. 36]; Reply in Support of Motion (the "Reply") [ECF No. 33].

### THE LAW

"A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Ibid.*

"A court may consider documents that are attached to a complaint when ruling on a motion for judgment on the pleadings." *Pass v. Principal Life Ins. Co.*, 561 F. Supp. 3d 1318, 1323 (S.D. Fla. 2021) (Altman, J.); *see also Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by

a federal district court in ruling on a motion to dismiss[.]"); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## ANALYSIS

The Defendant finds it "indisputable that the operative Plan expressly excludes the prescription drug Skytrofa." Motion at 4. Our Plaintiff counters with several arguments—including, as relevant here, that "[t]he alleged exclusion of Skytrofa is not clear on the face of the complaint as alleged by Florida Blue nor as provided for in Florida Blue's own documents." Response at 4. On this basis alone, we deny the Motion.

In support of its Motion, the Defendant points to the Plan's Benefit Booklet (the "Booklet") [ECF No. 1-1], which the Plaintiff appended to the Complaint. That Booklet, the Defendant explains, incorporates a Medication Guide [ECF No. 27-2], which in turn hyperlinks to a Medications Not Covered List (the "List") [ECF No. 27-3]. *See* Medication Guide at IV ("In addition to any drug not listed in the medication guide, a list of certain medications that are not covered may be found at Medications Not Covered List . . . . To determine the medication exclusions that apply to your plan, check your plan documents. Coverage details are also available to you by logging into the member section of www.floridablue.com." (hyperlinks omitted)). And *that* List includes "Skytrofa injection." List at 8. So, the Defendant contends, "the Plan's exclusion of Skytrofa injections is clear on the face of the Complaint and the incorporated documents appropriately considered by the Court." Motion at 5.

Our Plaintiff complicates that picture by directing us to the Coverage Guidelines [ECF No. 31-1], which the Booklet *also* incorporates. *See* Booklet at 26 ("In applying the definition of Medical Necessity in this Booklet to a specific Health Care Service, we may apply our coverage and payment guidelines then in effect."); *id.* at 93 ("In providing benefits under this Endorsement, we may apply the benefit guidelines set forth below, as well as any other applicable payment rules specific to

4

particular Covered Services listed in the Benefit Booklet."). Those Coverage Guidelines provide as

follows:

> Norditropin, Genotropin, and Omnitrope are the preferred growth hormone products. If switching to the preferred agent from a non-preferred agent, the continuation of therapy criteria can be used to determine medical necessity. For non-preferred growth hormone products, the member must meet **ONE** of the following:
>
> 1. The member has a hypersensitivity or FDA labeled contraindication to at least two of the following preferred agents that is not expected to occur with the requested agent – documentation must be submitted
>     - Norditropin
>     - Genotropin
>     - Omnitrope
>
> 2. **ALL** of the following – documentation must be submitted:
>
>     a. The request is for a long-acting growth hormone product (e.g., Ngenla, *Skytrofa*, Sogroya) indicated for the treatment of growth failure due to pediatric growth hormone deficiency in a child 1 year of age and older
>     b. The member must have received a trial of of at least two of the following for at least 12 months:
>         - Norditropin
>         - Genotropin
>         - Omnitrope
>
>     c. The member failed to achieve a 2 cm/year growth velocity
>     d. The rationale for use of the long-acting formulation is provided and the use is not for convenience

Coverage Guidelines at 2 (emphasis added).

The Plaintiff reads those provisions as providing that "Skytrofa" *is* "expressly covered . . . when the preferred brands are not suitable for the Patient." Response at 8 (emphasis omitted). He thus argues that, because Skytrofa is a "medically necessary prescription" for A.M., the Defendant's "denial of treatment violates the policy provisions, the Medication Guide[,] and the Coverage Guidelines." *Id.* at 2, 8; *see also id.* at 7 ("Florida Blue's own coverage guidelines . . . state that **non preferred agents are covered under certain circumstances**." (emphasis in original)).

The Defendant parries that the "Plaintiff's argument is . . . premised on a misreading of the Plan and incorporated Medication Guide." Reply at 7. In defense of that claim, it advances two points. *First*, it notes that the "Medication Guide explains" that "covered 'Pharmacy Benefits' include tiers of covered prescriptions, including 'Covered Generic Prescriptions' as Tier 1, 'Covered Preferred' Prescriptions as Tier 2, and 'Covered Non-Preferred' Medications as Tier 3." Reply at 7. *Second*, the Defendant observes that, "[d]irectly below that provision is the aforementioned 'Medications that are not covered,' including the incorporated list that includes Skytrofa." *Ibid.* And, based on those two points, the Defendant concludes that, "for this particular Plan, Skytrofa is **not** a Non-Preferred, Tier 3 Prescription that <u>could</u> be covered under the . . . Coverage Guideline in certain circumstances; rather, Skytrofa is in fact a wholly excluded drug because it is on the list of drugs that are *not covered by the Plan*." *Ibid.* (emphases in original).

The Plaintiff might well be misreading the Plan. But we cannot say that the Defendant's two arguments to that effect "impel[ ] . . . a legal conclusion based on those facts." *Dozier v. Pro. Found. for Health Care, Inc.*, 944 F.2d 814, 816 n.3 (11th Cir. 1991). The three-tiered system the Defendant describes deals with covered medications and tells us nothing about why Skytrofa falls beyond the three tiers—or, for that matter, why the Coverage Guidelines prove inapplicable *for this particular plan*. And the List the Defendant invokes excludes Skytrofa but *doesn't* purport to trump or negate the Coverage Guidelines, which explicitly reference Skytrofa. Instead of offering a clear explanation as to why the Plaintiff cannot rely on the Coverage Guidelines, the Defendant thus leaves us without the necessary context to understand the details of the Plaintiff's own insurance or how the Coverage Guidelines interact with the List and other relevant materials.

Resisting that conclusion, the Defendant argues in the alternative that, "even if Skytrofa was on this particular Plaintiff's Plan's Non-Preferred Prescription list instead of the list of drugs that are excluded from coverage, Plaintiff has failed to plead facts that would permit benefits under these

inapplicable Coverage Guidelines." Reply at 7. "Specifically," the Defendant maintains, the Plaintiff "fails to allege [that] A.M. trialed the alternatives . . . , as required for coverage under the inapplicable Coverage Guidelines." *Ibid.* But drawing all reasonable inferences in favor of the Plaintiff, we're obligated to find that the Complaint *does* plead enough facts from which we can reasonably infer that the Plaintiff *might* qualify for Skytrofa under the Coverage Guidelines. *See, e.g.,* Complaint ¶ 17 ("The Beneficiary requires Skytrofa over any other alternative growth hormone medication due to the fact that with chronic eczema, the patient's skin barrier is compromised and hyper-reactive. Daily GH shots containing preservatives could irritate or inflame the skin with each dose. Skytrofa's once-weekly, preservative-free injection is less likely to irritate or cause allergic dermatitis and minimizes repeated insult to the skin and avoids chemicals known to cause contact sensitivities. This makes Skytrofa the safer option dermatologically. The family and physician have proactively determined that Skytrofa is the only Growth Hormone Therapy suitable for this Patient to prevent foreseeable skin complications[.]"); *id.* ¶ 23 ("[T]he Patient's treating medical providers informed Florida Blue that there is no alternative prescription that is appropriate for the Patient due to his medical conditions[.]"); *id.* ¶ 29 ("Florida Blue denied coverage, citing alternative[s] (Norditropin, Genotropin, Omnitrope). However, multiple medical factors justify Skytrofa as the only appropriate and medically necessary option for this patient[.]"). At least today, then, we cannot confirm the Defendant's reading of the Plan.

\* \* \*

The Defendant presents a persuasive argument for its view that the Plan excludes Skytrofa. But the Plaintiff counters by identifying a *potential* exception to that exclusion. And the Defendant neither challenges the authenticity of that exception nor clarifies why it doesn't apply to the Plaintiff. We thus lack, on the record before us, enough information to grant a judgment on the pleadings. *See ADT LLC v. Skyline Sec. Mgmt., Inc.*, 2026 WL 575122, at *8 (S.D. Fla. Mar. 2, 2026) (Altman, J.) ("[T]he

battle of allegations now stands in equilibrium—which means, at this stage of the case, that the Plaintiff prevails."); *see also Tundidor v. Hernandez*, 2026 WL 1800959, at *28 (S.D. Fla. June 23, 2026) (Altman, J.) ("We cannot make arguments for the parties. 'Courts call balls and strikes; they don't get a turn at bat.'" (quoting *Clark v. Sweeney*, 607 U.S. ___, ___ (2026) (slip op., at 3))).

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Defendant's Motion for Judgment on the Pleadings [ECF No. 27] is **DENIED**.

2. The Clerk of Court is directed to **REOPEN** this case.

3. The parties shall file an updated joint scheduling report, as required by S.D. FLA. L.R. 16.1(b)(2), within **14 days**.

**DONE AND ORDERED** in the Southern District of Florida on July 24, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record